Good morning, Your Honor. May it please the Court. I'm Alan Hopper. I represent Appellant Richard Mesh. Counsel, why isn't this case exactly like the California Three Strikes Law that the Supreme Court considered in the last term? I'm sorry, why isn't this case like the Three Strikes case that was considered by the U.S. Supreme Court? The guy that stole some tape recordings and winds up in prison for 50 years? The distinction between the recidivist statutes and what happens here, Your Honor, is that in the recidivist statutes, there is a increased penalty for a future offense that's committed, a future crime that's committed, that increase is based upon past convictions. If a crime is committed today and there have been two prior convictions in California, then the statute is triggered, right? That's correct. And here, the statute is triggered based on past conduct, is it not? That's correct. What's the difference? The distinction is this. If what 1221C did was say that anyone who's been convicted of a past misdemeanor simple assault, if convicted of another offense in the future that is criminal conduct that was criminal conduct as it was defined at the time that the original offense was committed, or breaks a law, then there's going to be an enhanced penalty. The distinction is that here there's no new criminal act required. But for the law subsequent to the first offense, isn't there? Yes. But the possession of a firearm is illegal. It's perfectly legal to do that. It's rendered illegal only by virtue of the past conduct. It would be as if we said that anyone who's been convicted of two prior felonies is no longer permitted to purchase a house. Counsel, I don't know if that works. There are so many of us who are prohibited from possessing firearms, even though we've been perfectly law-abiding citizens in so many circumstances. For example, when we take a plane, or in many jurisdictions, if it's concealed and we don't have a special permit that has been granted to us then we can only be granted if we have no criminal convictions. In some places, nobody can possess a firearm at all. All sorts of regulation. So it's a little hard for me to see why I'm picking out a class of people based on their prior crimes and saying, for you, no guns, as should be treated as punishing them for the past crime rather than a mere regulatory scheme in the future. I agree with you, Your Honor. That's the correct analysis. And that's the analysis that this Court engaged in in the Huss case. And the pivotal question becomes, to determine whether or not it's punishment or instead is legitimate exercise of the State's regulatory powers, the connection between Why isn't it regulation? Since even for those of us who have no criminal record at all, our possession of firearms is so heavily regulated. We would submit that this 1221C's inclusion of misdemeanor simple assault is not a legitimate regulatory act, but instead rises to the level of punishment because of the distinction that the California legislature itself has made. The California legislature itself has concluded that there are some misdemeanor offenses that are sufficiently predictive of future dangerousness with firearms to justify the prohibition. And they have also decided that there are some misdemeanor assault offenses which are not. And those are the ones that are discussed. You know, if it was strict scrutiny, then the kind of narrow tailoring argument that you're making right now would have a lot of appeal. But I don't think firearms possession has been treated like speech. No, it's not strict scrutiny, Your Honor. And that's certainly not the argument that I'm making. The argument is that there has to be a sufficient nexus between the past conduct and the prohibited activity. Violence. He committed a violent crime. The California legislature has determined that some misdemeanor assault offenses are not sufficiently predictive. And it's completely irrational, given the crimes that they have excluded from the prohibition, for them to have included misdemeanor simple assault, which, as is pointed out in the brief and in Judge Hodges' dissent below, is a lesser included offense of some of the very offenses that the California legislature excluded. Justice Hodges believes, and my reading of the legislative history, I agree, that it was a mistake. The legislature did not intend to suddenly include in this class of offenses that they consider to be sufficiently predictive the crime that is the lowest on the totem pole of assault offenses. And if I may, the bill that was enacted that brought about the amendment that we're challenging here was AB42. And the legislative counsel's digest that describes what that amendment does reads, this bill would add offenses involving the infliction of corporal injury of a spouse and specified other persons to the above offenses and the offense of stalking. The bill would also add the willful and knowing violation of certain court orders involving domestic violence as specified. Now, that is not part of the act that was adopted by the legislature, however, right? No, sir. That's the opinion of an attorney. That's the opinion of the legislative counsel. The drafted language told the legislature he thought this is the way it would be interpreted and this is what his view of it was and that they, in enacting this, this is what they were trying to do. But it doesn't bind us as the law of California. Certainly not. I believe that it merely supports the Judge Hodges' conclusion that there is simply no rational basis for the legislature to decide suddenly that simple misdemeanor assault is going to be included when crimes like assault on the statute says, right? Yes, of course. Of course. This is 2254, right? Absolutely. We don't even decide really whether there is a double jeopardy violation. All we decide is whether the California decision was clearly contrary to or an unreasonable application of a Supreme Court decision. That's correct, Judge Kleinfeld. The 2254 clearly applies here. This is a post-edpa case. The test is whether or not controlling U.S. Supreme Court precedent was – whether the State court's decision was objectively unreasonable because it failed to apply controlling Supreme Court law. But I would submit that – Weber is the Supreme Court decision that there has to be a violation of, right? That's correct, Your Honor. And – but I would submit that – It doesn't even matter if California is wrong. It has to be totally out in right field. It has to be objectively unreasonable. And I would submit that, consistent with Justice Hodge's dissent, that it was – it is objectively unreasonable to, number one, for the California Supreme Court to not have even pretended to apply the Hawker analysis, which is a U.S. Supreme Court case that's directly on point. I think the Supreme Court has said it doesn't even matter if the State court failed to cite and was unaware of controlling Supreme Court authority. That's correct as well. But what this court has to do is determine whether or not – in order to determine whether or not the State court's decision was unreasonable, I would submit that this court needs to look to controlling U.S. Supreme Court precedent and determine whether or not there was an ex post facto violation and then determine whether – because if there was not, then there's no way that this could be an – the State court's decision could be unreasonable. But if this court concludes that under the U.S. Supreme Court precedent that there was an ex post violation, ex post facto violation, then you look to the State court decision and determine whether they got to the wrong answer, but they at least were applying the correct precedent, and the way that they got there is not objectively unreasonable. And we would submit that they clearly did not. All they did was – The reasoning was in a different order, that you never do decide whether there's a double jeopardy violation and then whether to cut the – and then subsequently decide whether to cut the State court some slack. Instead, you read the Supreme Court opinion and you say, regardless of whether it's the right answer or the wrong answer, could a court reasonably think that there's no double jeopardy violation? And if the answer is yes, you're done. If – if this court determines that the State Supreme Court could have reasonably concluded that there was no ex post facto violation, then yes, we're done. I would submit that the only way that this court can – can do that is to determine whether or not there was an – it thinks there was an ex post – ex post facto violation. I understand that in Andrade, the U.S. Supreme Court overruled this court's That brings me back to my first question, and I'm not sure that you really answered it. What they did that you're saying is punishment is they said, you can't carry a gun anymore. Why is that punishment? It's not putting him in jail. It's not fining him. It's just regulating him in his carrying of a gun. They say, you can't carry a gun anymore. But they also tell me I can't carry a gun in most circumstances. And they tell you, you can't carry a gun in most circumstances. Why isn't it just regulation, not punishment? Because there's not a sufficient nexus. And when you view the statutory scheme as a whole, and you recognize that – Wait a minute. I'm not even getting to the nexus. I'm asking why it's punishment. I believe that under the analysis of – of the Hawker case, which this Court applied in Haas and which discussed again in Russell v. Gregor, that the way you determine whether it's regulatory or punitive is you look to see whether there is a sufficient nexus between the past activity and the prohibited activity. And that under that test, given the statutory scheme, given the State's conclusion that there are some misdemeanor assault offenses which do not rise to the level just by the prohibition – What Supreme Court case clearly lays down that rule? The – the nexus that I'm discussing is as old as the United States v. Hawker decision of the U.S. Supreme Court, which was, as I said, discussed and applied in a very similar context by this Court in Haas when it was examining whether Oregon's felon in possession statute could withstand ex post facto scrutiny and found that that was a close call. The Oregon statute was a close call. Here we've got a felony – or rather, Oregon was a felony. Here we've got misdemeanors. In Haas, the Court pointed out – this Court pointed out that Oregon had specifically included offenses that were misdemeanors at the time that they were committed. I see that my time is up. Thank you. May it please the Court. Peggy Ruffray, Deputy Attorney General for Respondent. Your Honors, this is a two-part test that the Court has to look at. First is whether the statute is retrospective. And I don't think that's really seriously being disputed. It doesn't apply to events that occurred before the enactment. The conduct that's being regulated is the future possession of a gun. And that's the same kind of conduct that's in innumerable ex felon with a gun statutes, state, federal. They've all been upheld. So I don't think that's really the issue. The next part of the test is whether it constitutes punishment for that original offense, whether this is punishment for the misdemeanor assault from back in 1987. And the State Court found that it was not, again, because it increased the punishment based on your status as a repeat offender, but was looking toward the future conduct. The defendant was on notice that the statute had been enacted, and he had the gun subsequent to the time the statute was passed. You know, I can see where some regulation of future conduct would nevertheless be punishment. For example, if the legislature passed a statute that said all persons convicted of crimes of assault, domestic violence, various things, could not go about in the nighttime, could not be on the street between 8 p.m. and 6 a.m. And because that's a civil right that everybody else enjoys, imposing that curfew on the past offenders, even though it only regulated what they did after the statute was passed, would strike me as an additional punishment. I think that might be the case. So it seems to me your argument doesn't really do enough there. Well, this is – I think this is totally different. I mean, you have to confront the issue. Is it punishment or is it regulation? Well, the question is whether it's punishment for the original offense. I mean, the current – Well, it's an additional burden imposed because of the original offense. If it weren't for the original offense, he'd have the same right to carry a gun as anyone else. So – and the only reason the restriction on carrying a gun is imposed, just like the nighttime curfew in my hypothetical, is the original offense. So it seems to me that you can't avoid the question by just saying it's future oriented. You have to confront whether it's punishment or regulation. Well, again, I believe the question, and I've cited the case in my brief that specifically says it, but the question is whether it's punishment for the original offense. I mean, there's no question that Section 12021C is punishment. It's a criminal statute, but that's punishing the current activity of possessing the gun, which is based on your status of being a previously convicted misdemeanant, just like any other ex-felon with a gun statute. So when we look to see whether this constitutes some additional punishment for that original offense, that's what would make it ex post facto. And the defendant's argument seems to be that it is punishment for the original offense because misdemeanor assault is not really very serious. It's not – it's trivial. I don't think you understood my question. I'm sorry? I don't think you understood my question. Perhaps not. The difference between regulation and punishment, is that your question? Well – I didn't understand why that matters, because you thought as long as the only conduct that he can't engage in is in the future after the statute is passed, it just doesn't matter. Regulation, punishment, whatever, it's all because of his status. Well, no, I did attempt to answer your question, Your Honor, but my answer was that the question is not so much geared toward whether it's regulation or not, but whether it constitutes punishment for the original offense. I think that's what the cases that analyze these types of statutes are looking at. If the legislature said all persons with the status of prior misdemeanors must go to jail for 30 days, that would be an ex post facto law, right? Even though it's future oriented. I'm not sure. But to take the Ninth Circuit case, Huss, that the defendant discussed as an example, that was a case where the defendant was convicted of burglary, a new law was passed saying that you couldn't be in possession of rifles and shotguns afterwards. And the court said that was fine. The burglary was his previous status. Then the future conduct was possession of the guns. But it didn't constitute punishment, additional punishment for the original burglary. They were just saying what you couldn't do in the future. And to the extent that I think there were some questions about the nexus requirement, I'm not entirely sure that there is Supreme Court authority clearly establishing that kind of a nexus requirement. The Hawker case is from 1898. And all of the modern Supreme Court. Unless it's reversed. Well, all of the modern ex post facto cases like Weaver and Collins and all the ones that the state courts cited here, none of them focus on there being a nexus requirement. And, of course, if there's clearly established law, Supreme Court law requiring that, then that doesn't have to apply on habeas. But even if there is a nexus requirement, I think there clearly is here. This is a person who was convicted of a crime of violence, which is misdemeanor assault. And it's simply whether there is some reasonable connection that would mean that was predictive of their future behavior. The irrationality argument that simple assault is included, but more aggravated assaults are not included. Well, I think the problem. Is that part of the nexus analysis? Well, I think the problem with the superior court judge who was sitting on this case in the state court and who wrote the dissent, he got off on this tangent about the rational basis test, which applies to some other argument. It's not an ex post facto claim argument. I mean, he was imposing some kind of whatever it was, free speech or something, but it's not really doesn't speak to the particular legal question that we have before us, which is simply was it reasonable to say that assault is predictive of future violent behavior, such that we don't want those people to carry a gun. And I would point out that it's only. The effect of reasonableness analysis, though, you say they can't carry guns, but somebody who carry somebody assault somebody in the school or something. Well, if you look at the statute, there are, oh, I don't know, 30 or 40 different misdemeanors that are included. And some of those would arguably be less than misdemeanor assault, like violating a restraining order, resisting arrest. None of those necessarily involve violence. Those can be verbal offenses. Let's see, brandishing, I mean, there's a variety of different crimes, and assault seems to misdemeanor assault seems to fall squarely in the middle of that. It's not like it's necessarily the least offense listed in the statute. So I think the question is simply is that reasonable to say that the legislature can say a person convicted of misdemeanor assault is likely to be the kind of person that we don't want to carry a gun for the next 10 years. And what I wanted to say was the statute allows you to seek an exemption from that, from the prohibition if you can show that you would be fit to carry a gun in a safe and lawful manner. So this statute only applies to those convicted of misdemeanor assault who cannot show that they carry, that they can carry a gun in a safe and lawful manner. So given that, and then also given there's a time limitation on it, given all of that, I think it's reasonable to say that that is a sufficient nexus to the prohibition to show that it's not punitive for the original offense. This is looking to the future. And it's also has to, the whole thing has to be analyzed under the deferential standard of review. I think under all of that, the statute should pass muster. Thank you, counsel. Thank you. Counsel. I know that I have just a few minutes. Oh, I guess you were over already. I didn't realize that. If you want to take 20 or 30 seconds for any point you need to make, go ahead. Thank you, Your Honor. Could you comment on the ability of an individual to get relieved of this disability by a judge upon a proper showing? Two points. The relief under the exemption clause of 1221C is entirely discretionary, that a judge even presented with more than a preponderance of the evidence that a person was not likely to use firearms in a dangerous manner is not required to grant the exemption. And number two, and I think this really goes to the heart of the problem with the statute, is that there's just no notice. I mean, as a practical matter, a person who was convicted in 1987 wakes up on the morning of the effective date of the amendment in 1994, and the gun that it was perfectly legal for him to have in his closet the night before, it's suddenly become a felony for him to possess. And he has no way of knowing that, no way of knowing that he needs to go and petition for extraordinary relief. So I believe that that clause is not enough to save the statute. If the Court has nothing more, I'll submit the matter.  MSC versus Plyler is submitted. Next is Taylor versus Plyler.
judges: Cudahy, Beezer, Kleinfeld